IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

RUDOLPH THOMAS and
ASHELEE SMITH,

               Plaintiffs,

v.

SPRINT SOLUTIONS, INC.,

               Defendant.

NO. C08-5119 TEH

ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION TO DISMISS

This matter comes before the Court on a motion to dismiss filed by Defendant Sprint Solutions, Inc. ("Sprint"). After reviewing the parties' written arguments, the Court finds this motion suitable for resolution without oral argument and VACATES the motion hearing scheduled for April 5, 2010. For the reasons set forth below, the Court now GRANTS IN PART and DENIES IN PART Sprint's motion.

**BACKGROUND**

Plaintiffs Rudolph Thomas and Ashelee Smith challenge the manner in which Sprint charges its cellular telephone customers late fees and reconnect fees. As its name implies, a late fee is charged when a payment is not received by its due date. If a customer's bill remains unpaid for an unspecified period, Sprint allegedly impairs that customer's service and imposes a $25 fee – the reconnect or impairment fee – to stop impairing the service.

Thomas and Smith seek to represent three classes:

      a. ***California Late Fee Damages/Restitution Class:*** All California residents who purchased Sprint cellular phone service primarily for personal, family or household purposes who paid Sprint a 5% late payment fee during the longest period allowed by law;

> b. ***California Impairment Fee Damages/Restitution Class:*** All California residents who purchased Sprint cellular phone service primarily for personal, family or household purposes who paid Sprint a $25 impairment fee during the longest period allowed by law;
>
> c. ***California Injunctive Relief Class:*** All California residents who are current customers of Sprint.

First Am. Compl. ¶ 19.

Plaintiffs allege both that the late and reconnect fees are unlawful penalty fees and that Sprint failed to adequately disclose these fees in the terms and conditions to which customers must agree. Until January 2007, the terms and conditions provided that, "Past due amounts accrue late charges until paid at the rate of 5% per month or at the highest rate allowed by law." *Id.* ¶ 30. After January 2007, the terms and conditions eliminated reference to 5% and stated that "a late payment charge, which may be charged at the highest rate permissible by law, may be applied to the total unpaid balance. We may also charge you any costs we pay to a collection agency to collect unpaid balances from you." *Id.* The complaint is less clear about the reconnect fees but alleges that, "During at least part of the class period, Sprint did not disclose to consumers in its Terms and Conditions the amount of its impairment fee." *Id.* ¶ 33.

The complaint alleges that Sprint charged Thomas late fees, which Thomas paid, on at least three occasions: $6.80 in July 2008, $6.71 in August 2008, and $6.99 in October 2008. The complaint is less specific about Smith and alleges only that she "has been charged and has paid Penalty Fees on more than one occasion." *Id.* ¶ 10. The complaint elsewhere defines "Penalty Fees" to include both late fees and impairment fees. *Id.* at 1.

On September 2, 2009, this Court granted in part and denied in part Sprint's motion to stay. Based on pending proceedings before the Federal Communications Commission ("FCC") to determine whether late fees charged by cellular telephone carrier are "rates" under 47 U.S.C. § 332(c)(3)(A) and, if so, whether they are reasonable under applicable law, the Court stayed the case except as to the "third cause of action [in the then-operative original complaint], under California Business and Professions Code section 17200, to the

2

extent it is based on allegations that Sprint unlawfully failed to disclose the late fees charged to customers." Sept. 2, 2009 Order at 2. Pursuant to the parties' stipulation and Court order, Plaintiffs filed the First Amended Complaint on January 27, 2010. In their stipulation, the parties agreed that:

> The First Amended Class Action Complaint for Damages and Injunctive Relief is stayed pursuant to the Court's September 2, 2009 Order, except to the extent it is based on allegations that Sprint, unfairly, deceptively or unlawfully failed to disclose the late fees or impairment fees charged to customers. This stipulation is without prejudice to each party's right to present argument to the Court regarding the precise scope of the stay as it relates to new or amended allegations in the First Amended Complaint.

Jan. 27, 2010 Stip. ¶ 2.

**LEGAL STANDARD**

Defendants move to dismiss this case under both Rule 12(b)(6) and Rule 12(b)(1) of the Federal Rules of Civil Procedure. Dismissal is appropriate under Rule 12(b)(6) when a plaintiff's allegations fail "to state a claim upon which relief can be granted." In ruling on a motion to dismiss, a court must "accept all material allegations of fact as true and construe the complaint in a light most favorable to the non-moving party." *Vasquez v. Los Angeles County*, 487 F.3d 1246, 1249 (9th Cir. 2007). Courts are not, however, "bound to accept as true a legal conclusion couched as a factual allegation." *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949-50 (2009) (citation omitted). Courts may also disregard factual allegations that are controverted by any of the following: exhibits attached to the complaint, matters subject to judicial notice, or documents necessarily relied on by the complaint and whose authenticity no party questions. *Lee v. City of Los Angeles*, 250 F.3d 668, 688-89 (9th Cir. 2001).

A Rule 12(b)(6) dismissal "can be based on the lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory." *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990). To survive a motion to dismiss, a plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). Plausibility does not equate to probability, but

3

it requires "more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 129 S. Ct. at 1949. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* Dismissal of claims that fail to meet this standard should be with leave to amend unless it is clear that amendment could not possibly cure the complaint's deficiencies. *Steckman v. Hart Brewing, Inc.*, 143 F.3d 1293, 1296 (9th Cir. 1998).

Rule 12(b)(1) provides for dismissal of a claim for lack of subject matter jurisdiction. A motion brought under this rule may raise either a facial or a factual attack. *Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004). "In a facial attack, the challenger asserts that the allegations contained in a complaint are insufficient on their face to invoke federal jurisdiction. By contrast, in a factual attack, the challenger disputes the truth of the allegations that, by themselves, would otherwise invoke federal jurisdiction." *Id.* On a facial attack, dismissal is appropriate only if the complaint's allegations, which are assumed to be true, are insufficient to support a finding of jurisdiction. *Wolfe v. Strankman*, 392 F.3d 358, 362 (9th Cir. 2004). On a factual attack, "no presumption of truthfulness attaches to the plaintiff's allegations" if the challenged jurisdictional facts are not intertwined with the merits of the case, and the court "may hear evidence and make findings of fact necessary to rule on the subject matter jurisdiction question prior to trial." *Rosales v. United States*, 824 F.2d 799, 803 (9th Cir. 1987).

> However, if the jurisdictional issue and substantive claims are so intertwined that resolution of the jurisdictional question is dependent on factual issues going to the merits, the district court should employ the standard applicable to a motion for summary judgment and grant the motion to dismiss for lack of jurisdiction only if the material jurisdictional facts are not in dispute and the moving party is entitled to prevail as a matter of law.

*Id.*

//
//
//
//

4

# DISCUSSION

## I. Clarification of the Court's Stay Order

The Court first resolves the parties' dispute over whether the stay applies to paragraph 52 of the First Amended Complaint. The disputed paragraph alleges the following:

> In addition, Sprint violates Section 1770(a)(19) of the CLRA [Consumers Legal Remedies Act] because it is unconscionable to insert undisclosed, significant monetary penalty fees into a contractual provision. The late fee alone amounts to at a minimum 60% annual penalty rate on any amount owed. The impairment fee is even more disproportionate and excessive. To insert these Penalty Fees into an adhesive contract that contains a $200 cancellation fee without disclosing the amount of the fees is unconscionable. *See* Cal. Civ. Code § 1770(a)(19).

First Am. Compl. ¶ 52.

The allegations in this paragraph are stayed, but only in part. To the extent that the paragraph alleges that the CLRA is violated by failure to disclose the amounts of the late and reconnect fees, the allegations are not covered by the stay. However, to the extent that the paragraph alleges that the CLRA is violated because the charged fees are excessive, the allegations are included in the stay. Until the stay is lifted, this Court will not decide whether the amounts charged by Sprint as a late fee or reconnect fee are reasonable or lawful; the Court will consider only whether, assuming the fees were lawful, Sprint adequately disclosed them. Thus, the only question in relation to paragraph 52 that is not covered by the stay is whether it is unconscionable to insert provisions for late fees and reconnect fees into a contract without disclosing the specific amounts of those fees.

The same analysis applies to Plaintiffs' claims under California Business and Professions Code section 17200, the state's Unfair Competition Law ("UCL"). If resolution of an allegation under the UCL would require the Court to determine whether the fee itself was excessive or unlawful, then the claim is stayed.

## II. Plaintiffs' Standing to Sue

Turning to the substance of Sprint's motion to dismiss, the company's first contention is that neither Thomas nor Smith has standing to sue under the UCL. Although standing can

5

be a question of subject matter jurisdiction raised under Federal Rule of Civil Procedure 12(b)(1), the arguments raised by Sprint concern statutory standing and not standing under Article III of the United States Constitution. The California Supreme Court has explained that, to have standing under the UCL, "a class representative proceeding on a claim of misrepresentation as the basis of his or her UCL action must demonstrate actual reliance on the allegedly deceptive or misleading statements." *In re Tobacco II Cases*, 46 Cal. 4th 298, 306 (2009). The court was interpreting the requirements of California Business and Professions Code section 17204, which provides that "a private enforcement action under the UCL can only be brought by 'a person who has suffered injury in fact and has lost money or property as a result of the unfair competition.'" *Id.* at 324-25 (quoting Cal. Bus. & Prof. Code § 17204).

It may well be that a person who lacks statutory standing under the UCL also lacks Article III standing. *See id.* at 325 n.16 (discussing the plaintiffs' argument that Proposition 64, which modified section 17204, "was intended to do no more than require federal article III standing"). However, Sprint has argued only that Plaintiffs do not meet the requirements for standing under the UCL, not that they do not meet the requirements for standing under Article III. Because "a dismissal for lack of statutory standing is properly viewed as a dismissal for failure to state a claim rather than a dismissal for lack of subject matter jurisdiction," Sprint's motion is therefore viewed properly under Federal Rule of Civil Procedure 12(b)(6) rather than 12(b)(1). *Vaughn v. Bay Envtl. Mgmt., Inc.*, 567 F.3d 1021, 1024 (9th Cir. 2009). The Court therefore does not consider the external evidence presented by Sprint concerning the fees that have been paid by Thomas and Smith and the dates of their contract renewals.

Nonetheless, Plaintiffs' allegations fail to establish statutory standing even under the 12(b)(6) standard. The UCL requires that a named class representative must demonstrate "actual reliance" to have standing to sue – i.e., the plaintiff must show "that the defendant's misrepresentation or nondisclosure was an immediate cause of the plaintiff's injury-producing conduct." *Tobacco II*, 46 Cal. 4th at 326 (citations and internal quotations

omitted). The misrepresentation or nondisclosure need not be "the sole or even the predominant or decisive factor influencing [the plaintiff's] conduct"; instead, "it is enough that the representation has played a substantial part, and so had been a substantial factor, in influencing his decision." *Id.* (citations and internal quotations omitted). Contrary to Plaintiffs' assertions, this latter language does not eliminate the requirement that the defendant's conduct be an immediate cause; it merely clarifies that "the plaintiff need not demonstrate it was the only cause." *Id.* One way of demonstrating that a misrepresentation was the immediate cause of the plaintiff's injury is by showing that "the plaintiff in all reasonable probability would not have engaged in the injury-producing conduct" if the misrepresentation were absent. *Id.* (citations and internal quotations omitted).

Here, Plaintiffs fail to allege facts that, if proven, would demonstrate actual reliance. They rely on allegations that Thomas "would have given . . . disclosure [of the amount of late fees that might be charged] substantial consideration in deciding whether or not to renew," First Am. Compl. ¶ 38; that Smith "would have considered the amount of [the late and reconnect] fees in deciding her course of action in deciding whether to enter into a contract with Sprint," *id.* ¶ 40; and that "had the Penalty Fees been disclosed, Plaintiffs would have considered this information in making their choices about purchasing cellular service," *id.* ¶ 60. This is insufficient. It is not enough for Plaintiffs to allege that they would have considered the exact amounts of the late and reconnect fees had such information been disclosed; Plaintiffs must also allege that the failure to disclose "played a substantial part" in their decisions to contract with Sprint. *Tobacco II*, 46 Cal. 4th at 326 (citation and internal quotations omitted). If Plaintiffs would have considered the information but would have nonetheless entered into a contract, then they do not have standing to sue under the UCL because they would not be able to show that Sprint's nondisclosure was the immediate cause of their injuries. *See Laster v. T-Mobile USA, Inc.*, Case No. 05cv1167, 2009 U.S. Dist. LEXIS 116228, at *19 (S.D. Cal. Dec. 14, 2009) (concluding that plaintiff failed to demonstrate actual reliance by asserting that an alleged misrepresentation was a "substantial factor in influencing his decision" when he admitted that he "'probably' would have bought

7

the phone" even if he had known the true facts). Accordingly, dismissal of Plaintiffs' UCL claim for failure to allege statutory standing is proper under Rule 12(b)(6).

Although the Court did not consider the evidence presented by Sprint in reaching this conclusion, it makes the following observations, none of which should be considered a final decision on whether the evidence will ultimately establish or negate Plaintiffs' standing to sue. First, if Plaintiffs amend the complaint, they should consider specifically alleging that one of the named plaintiffs paid reconnect fees in addition to late fees. If they do not do so, and instead merely repeat their allegation that "Smith has been charged and has paid Penalty Fees on more than one occasion," First Am. Compl. ¶ 41, then the Court may invite a further motion to dismiss, or order Plaintiffs to show cause, concerning whether any named plaintiff has Article III standing to assert claims based on the reconnect fee.

Second, the evidence presented by Sprint does not appear to establish that Thomas and Smith knew the exact amount of the late fees at the time they entered into their initial contracts with Sprint. Indeed, while Sprint claims that the terms and conditions to which Thomas initially agreed "expressly provided for a late fee of 5%," Mot. at 11, the cited exhibit actually states that late charges would accrue "at the rate of 5% per month *or at the highest rate allowed by law*." Layne Decl. Ex. A at 7 (unpaginated) (emphasis added). As to Smith, Sprint argues only that her "first bill disclosed the exact amount of the Late Fee, and she had 29 days from the date of that bill to cancel her contract with Sprint without being subject to an early termination fee." Mot. at 11. Even if this were true, it would not appear to answer the question of whether Smith would have chosen to enter into a contract with Sprint at all had she known the amount of the late fee.

### III. Whether Plaintiffs Have Stated a Claim

The Court now turns to Sprint's arguments that Plaintiffs, even if they have standing, have failed to state a claim under either the UCL or the CLRA. The Court's discussion is limited to the claims that are not stayed – i.e., claims that do not require consideration of whether the fees charged by Sprint are unlawful or excessive.

8

**A. UCL**

The UCL "establishes three varieties of unfair competition – acts or practices which are unlawful, or unfair, or fraudulent." *Podolsky v. First Healthcare Corp.*, 50 Cal. App. 4th 632, 647 (1996). To state a claim under the fraudulent prong of the UCL, a plaintiff need not plead all of the elements of a common law fraud claim – i.e., that the allegedly fraudulent deception "be actually false, known to be false by the perpetrator and reasonably relied upon by a victim who incurs damages." *Tobacco II*, 46 Cal. 4th at 312 (citation omitted). Instead, the test is whether "members of the public are likely to be deceived." *Podolsky*, 50 Cal. App. 4th at 648 (citation omitted). In an omissions case, this means that the plaintiff must allege a duty to disclose: "Absent a duty to disclose, the failure to do so does not support a claim under the fraudulent prong of the UCL." *Berryman v. Merit Prop. Mgmt., Inc.*, 152 Cal. App. 4th 1544, 1557 (2007). "This is because a consumer is not 'likely to be deceived' by the omission of a fact that was not required to be disclosed in the first place." *Buller v. Sutter Health*, 160 Cal. App. 4th 981, 987 (2008). Similarly, "although a claim may be stated under the CLRA in terms constituting fraudulent omissions, to be actionable the omission must be contrary to a representation actually made by the defendant, or an omission of a fact the defendant was obliged to disclose." *Daughtery v. Am. Honda Motor Co.*, 144 Cal. App. 4th 824, 835 (2006).

California law provides that "[n]ondisclosure or concealment may constitute actionable fraud" under four circumstances:

> (1) when the defendant is in a fiduciary relationship with the plaintiff; (2) when the defendant had exclusive knowledge of material facts not known to the plaintiff; (3) when the defendant actively conceals a material fact from the plaintiff; and (4) when the defendant makes partial representations but also suppresses some material facts.

*Heliotis v. Schuman*, 181 Cal. App. 3d 646, 651 (1986). The first circumstance does not apply here because Plaintiffs do not contend that they had a fiduciary relationship with Sprint. "Each of the other three circumstances in which nondisclosure may be actionable presupposes the existence of some other relationship between the plaintiff and defendant in

which a duty to disclose can arise." *LiMandri v. Judkins*, 52 Cal. App. 4th 326, 336-37 (1997). Such a duty exists in this case, as "a duty to disclose may arise from the relationship between seller and buyer . . . or parties entering into any kind of contractual agreement." *Id.* at 337 (citations omitted). The question is therefore whether the exact amounts of the late and reconnect fees is "material," meaning that "a reasonable man would attach importance to its existence or nonexistence in determining his choice of action in the transaction in question." *Tobacco II*, 46 Cal. 4th at 327 (citations and internal quotations omitted). Sprint has not argued that the amounts of the fees are immaterial.

Instead, Sprint relies on three district court cases concerning other cellular telephone carriers' contracts to argue that it had no duty to disclose the actual amount of the late and reconnect fees in this case. However, these cases are distinguishable because the carriers were simply passing on various government-related costs to consumers, and the courts concluded that it was sufficient to disclose that fact without disclosing specific amounts to be charged. *Riensche v. Cingular Wireless LLC*, Case No. C06-1325Z, 2009 U.S. Dist. LEXIS 95802, at *20 n.6 (W.D. Wash. Oct. 2, 2009); *Janda v. T-Mobile*, Case No. C05-3729 JSW, 2009 U.S. Dist. LEXIS 24395, at *20-21 (N.D. Cal. Mar. 13, 2009); *Smale v. Cellco Partnership*, 547 F. Supp. 2d 1181,1186-87 (W.D. Wash. 2008).[1] Here, the late and reconnect fees are generated and controlled by Sprint and are therefore distinguishable. For example, there is no concern that Sprint would be unduly burdened by having to update the amount of these fees whenever, outside of its control, the government changed the tax rate. *See, e.g., Riensche*, 2009 U.S. Dist. LEXIS 95802, at *20 n.6. Thus, the Court rejects Sprint's argument that these cases establish that a wireless carrier is never required to disclose the amount of any fee, regardless of whether it originates with the carrier or is related to taxes or other government-related fees.

//

//

//

---

[1] The Court notes that *Janda* was designated as "not for citation."

10

In short, Sprint has failed to persuade the Court that Plaintiffs, if they could sufficiently allege standing, would fail to state a claim under the fraudulent prong of the UCL.[2] Leave to amend is therefore proper.

**B.     CLRA**

The only non-stayed CLRA claim is Plaintiffs' contention that Sprint violated California Civil Code section 1770(a)(19), which makes "[i]nserting an unconscionable provision in the contract" unlawful, by disclosing the late and reconnect fees without disclosing the amounts of those fees. Sprint contends that this claim fails as a matter of law "because Plaintiffs cannot prove unconscionability." Mot. at 18.

Unconscionability has two components: procedural unconscionability and substantive unconscionability. *Armendariz v. Found. Health Psychcare Servs., Inc.*, 24 Cal. 4th 83, 114 (2000). Both components must be present to render a contract term unenforceable, but they need not be present to the same degree; instead, there is essentially a "sliding scale" such that "the more substantively oppressive the contract term, the less evidence of procedural unconscionability is required to come to the conclusion that the term is unenforceable, and vice versa." *Id.* (citation omitted). The procedural element focuses on "oppression or surprise due to unequal bargaining power," while the substantive component focuses on "overly harsh or one-sided results." *Id.* (citation and internal quotations omitted).

> A provision is substantively unconscionable if it "involves contract terms that are so one-sided as to 'shock the conscience,' or that impose harsh or oppressive terms." The phrases "harsh," "oppressive," and "shock the conscience" are not synonymous with "unreasonable." Basing an unconscionability determination on the reasonableness of a contract provision would inject an inappropriate level of judicial subjectivity into the analysis. ". . . The terms must shock the conscience."

---

[2]The Court need not and does not consider whether Plaintiffs could also state a claim under the unfair or unlawful prongs of the UCL. *See, e.g., Morgan v. AT&T Wireless Servs., Inc.*, 177 Cal. App. 4th 1235, 1255 (2009) (explaining that, in considering a demurrer, "we need not, and do not, decide whether the conduct alleged meets any of the definitions of 'unfair' (or whether it meets the definition of 'unlawful') because we find that plaintiffs have alleged a fraudulent business practice under the UCL").

11

*Morris v. Redwood Empire Bancorp*, 128 Cal. App. 4th 1305, 1322 (2005) (citations omitted).

Plaintiffs' only response to Sprint's argument on unconscionability is that "[a]lthough unconscionability is a question of law for the court, factual issues bear on that determination," including "the sophistication of the parties and the equality of bargaining power." Opp'n at 14-15 (citations omitted). However, the factual issues identified by Plaintiffs are, in fact, undisputed; Sprint does not argue that the terms and conditions do not form a contract of adhesion – i.e., "a standardized contract, which, imposed and drafted by the party of superior bargaining strength, relegates to the subscribing party only the opportunity to adhere to the contract or reject it." *Armendariz*, 24 Cal. 4th at 113 (citation omitted). This is sufficient to establish procedural unconscionability, but only to a "minimal degree" because Plaintiffs "had an opportunity to discover and use an alternate provider" for their cellular telephone service. *Gatton v. T-Mobile USA, Inc.*, 152 Cal. App. 4th 571, 585 (2007). Plaintiffs must therefore "make a strong showing of substantive unconscionability to render the [disputed] provision[s] unenforceable." *Id.*

However, Plaintiffs have failed to make any argument, let alone a "strong showing," that the imposition of a 5% late fee or a $25 reconnect fee is substantively unconscionable if the existence but not the amounts of those fees is disclosed in the contract. In the absence of any authority or argument to the contrary, the Court does not find these amounts to be so harsh as to shock the conscience. *Cf. Gatton*, 152 Cal. App. 4th at 584 (describing a $50 fee for terminating an individual retirement account as "relatively insignificant"); *Aron v. U-Haul Co. of Cal.*, 143 Cal. App. 4th 796, (2006) (holding that "U-Haul's $20 fueling fee, additional charges for fuel used but not replaced, and allegedly illegal measuring system do not shock the conscience as a matter of law"). Accordingly, Plaintiffs' only non-stayed CLRA claim fails as a matter of a law.[3]

---

[3] The terms and conditions are alleged to state that late fees may be charged at the highest rate allowed by law. If Sprint's late fees did, in fact, exceed what was permissible under the law, then Plaintiffs may be able to state a claim based on unconscionability. However, any such claim is currently stayed and therefore beyond the scope of this order.

**CONCLUSION**

Pursuant to the above discussion, Sprint's motion to dismiss is GRANTED IN PART and DENIED IN PART. In particular:

1. The Court clarifies that the stay imposed on September 2, 2009, encompasses all claims that would require a determination of whether the late and reconnect fees charged by Sprint are reasonable or lawful.

2. The only CLRA claim under paragraph 52 of the First Amended Complaint that is not stayed is DISMISSED for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6).

3. Plaintiffs' non-stayed UCL claims are DISMISSED under Rule 12(b)(6) because Plaintiffs have failed to adequately allege statutory standing. However, because Plaintiffs may be able to cure this deficiency, and because Sprint has not persuaded the Court that the allegations would otherwise fail to state a claim under the fraudulent prong of the UCL, Plaintiffs are granted leave to amend. The second amended complaint shall be filed on or before **April 26, 2010.**

4. The case management conference is continued from April 5, 2010, to **June 14, 2010, at 1:30 PM.** The parties shall meet and confer and file a joint case management conference statement on or before **June 7, 2010.**

**IT IS SO ORDERED.**

Dated: 03/30/10

THELTON E. HENDERSON, JUDGE
UNITED STATES DISTRICT COURT

13